Good morning, Your Honors. My name is Teresa Salazar, and I represent the petitioner, Ana Machado Cedillos. The Board in this case abused its discretion and exceeded its scope of review. First, it unreasonably delayed considering Ms. Machado Cedillos' appeal for almost seven years, and then it took administrative notice of the passage of time. And as an afterthought, it appears that they indicated in light of present country conditions. However, the Board did not indicate which particular facts it was taking administrative notice of or how those particular facts would have made Ms. Cedillos' fear no longer well-founded. And we would contend that that is an abuse of discretion for the Board to take administrative notice of the passage of time and the — in light of present country conditions. They didn't even indicate it was a change in country conditions. They said in light of present country conditions. After seven years, of course, conditions in the country, of course, have changed. Well, what concerns me about this case is, in a sense, you prevailed at the BIA. You have won a remand back to the IJ. When all of this can come in and get taken up again, what's wrong with that result? Well, because Ms. Cedillos had already met her burden by the year 2000, because that's what the Board found, that she had a well-founded fear of persecution, and in all likelihood that she would have been granted relief. There were no adverse factors to deny her to merit a denial of her asylum applications on the basis of discretion. In essence, the Board basically gave the government a second bite at the apple. But didn't the Board have broad discretion at that time? The law changed subsequently, but at that time, didn't the BIA have broad discretion in allowing — in considering new factors and remanding cases such as your client's? I believe the Board did have discretion to take administrative notice, but all the cases, the cases from this circuit and other circuits actually address the Board taking administrative notice of particular facts and actually explaining in each case where the Board, whether those facts are not legislative and beyond dispute, actually explaining why it is that those facts make the applicant's fear no longer well-founded. And that's not what happened in this case. It appears the Board just kind of hoped that the changing conditions due to the passage of time would have affected her application. Did the Board really consider factors, new facts? I mean, did it really take administrative notice of any facts? No, it appears that they took administrative notice of the passage of time. Well, wouldn't that be an appropriate thing to do? But to preserve the rights of your client, remand the case, as the Board did, for further proceedings. Is the problem that they didn't give the I.J. specific instructions or they failed to interpret what they meant by the finding that made her statutorily eligible? Excuse me, Your Honor. I needed a second to think. I think the problem here is that the Board doesn't do this in every case. The Board doesn't remand to the I.J. in other cases. It only does it, it appears, when it's to their benefit. I mean, the Board doesn't remand to the I.J. I mean, if the passage of time would be I can tell you we've seen many, many cases where the Board has remanded to the I.J. for various reasons. I mean, it could range, it's a very long range. Well, if you were to allow the Board broad discretion to remand based on the passage of time, I think that they should also be required to do it in cancellation of removal cases where a substantial amount of time has passed and circumstances, of course, have And they don't always do it in such circumstances. Okay. Give me your interpretation of the Hoxha case, H-O-X-H-A. Are you familiar with that? I'm afraid not, Your Honor. I'm not familiar with it. Okay. Well, the problem here, it seems to me, is that the Board found that she had a well-founded fear. They found that she didn't meet the requirements of the statute. But then it sent it back to the I-J and appropriately could have to look at the country conditions for the I-J to exercise its discretion, but not to reconsider the question of whether she qualified for asylum, having found already, the Board having found that she did qualify for asylum. True. I would agree with that. They do have the authority to remand based on discretion, but they didn't limit it to discretion. They actually made it broader, and they allowed the I-J to consider her eligibility for relief all over again. I think you're right. I think that's a problem. All right. Just so I understand you. And what about the continuance problem? Are you concerned with that? Well, I am concerned just because of the circumstances of this case. It appears that the Board has met the regulations by doing the reverse, by telling her that they cannot hold her case in abeyance because of the time limits imposed by the regulations. Now, I'd just like to point out that those time limits, the regulations indicate are an internal management directive, and the Board doesn't always follow them. And it appears that the regulations contemplate that the Board will not always be able to meet that, because it doesn't allow an applicant to complain to any court based on their, the Board's inability to meet those time limits. But in this case ‑‑ Do you have any idea where her husband's case is, how long it will be before anything happens in her husband's case? Yes. And her case, her husband's case was pending at the asylum office, his NACADA application and his asylum application. Now, according to our records, the asylum office issued a decision in 2006, and that decision was to allow the NACADA application. On and about May 2006, that's when they also issued a new charging document against her husband. But we did not receive a decision on the NACADA application. Now, I had an opportunity to discuss with the government's attorney prior to starting the argument, and he indicated there was a decision on the NACADA suspension application for the husband in the year 2005. We are not aware of that decision, and of course, if we were, we would have obviously done something about it. Of course, I think that regardless of when it was issued, I think it might have been too late for Ms. DeVos to motion the Board to reopen her case to hear her suspension application, because she only has 90 days from the Board decision, and the Board's decision was issued in August 2004. I just want to go back to your first argument. What are you saying the BIA should have done once it found that she met the requirements for asylum, at least the first step? I believe the Board should have indicated that she met the requirements and that if remand was necessary, it was necessary solely for consideration of any discretionary factors that would affect her eligibility, and not to allow her to be released. I think the Board should have indicated that she met the requirements and that if remand was necessary, it was necessary solely for consideration of any discretionary factors that would affect her eligibility, and not to allow the government to have a second bite of the apple, mainly, to relitigate her entire application all over again. You may reserve your time. I will reserve my time. Thank you, Your Honor. Thank you, Counsel. We'll hear from the Governor. Good morning, Your Honors. May it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. Ms. Machado presents two issues. First, whether the BIA exceeded its authority in remanding the matter to the immigration judge to determine whether or not current country conditions had any effect on the Board's determination that Ms. Machado established that she had a well-founded fear based on country conditions which existed some years ago. I take it the government concedes that the BIA, in reversing the IJ, determined that this Petitioner was eligible. She was a refugee. That's right. She met her burden of proving that she was a refugee eligible for a discretionary determination. All right. So on remand, the IJ cannot reopen that question. Does the government agree with that or not? I agree completely with that. I agree with that. But didn't the BIA say that she had a well-founded fear of persecution and therefore was entitled to asylum? No, because they can't do that. All they can determine is she had a well-founded fear of persecution. Right. She's established, she's a refugee, and thus she is eligible for discretion. If I may, Your Honor, Your Honors, I need to bring up an issue which isn't in the brief, and it's a jurisdictional issue, and it relates to whether or not Ms. Machado exhausted her administrative remedies with respect to this case, and I believe she did not. Isn't it rather late to bring that argument up in front of this Court? It's a jurisdictional issue, Your Honor, so it's not waived. I apologize that I didn't write the brief. I apologize that this was not caught earlier. Well, did you ever stop to think that we might entertain a 28J letter or suggest a supplemental brief in light of newly discovered circumstances? Anything like that? Your Honor, I just realized the argument yesterday, so I wasn't able to do that. I'm happy to submit a 28J letter or a supplemental brief if you like. And if you'd like me to talk about the argument briefly now, I'm happy to do that. But the argument is that she did not exhaust, properly exhaust, because the order that she says is ultra-virus was issued in 2000. The Board's regulations provide only 30 days to file a motion for reconsideration. She raised this issue to the Board for the first time in 2004 in her motion for reconsideration of the Board's August 2004 order denying her appeal of the immigration judge's decision on remand. I think it is certainly arguable, if not successfully arguable, that if she would have raised that issue in her direct appeal of the immigration judge's decision on remand, that she might have exhausted. But she didn't do that. She only raised two issues to the Board in her appeal. She argued that the immigration judge erred in failing to accord her a presumption of a well-founded fear, and she argued that the immigration judge erred in failing to continue the matter pending her resolution of her husband's Nicara application. So she – the Board didn't have occasion to consider that, so her raising the issue of the immigration judge's decision on remand was not exhaustive. She did not argue that the Board exceeded its authority by remanding. And she could have done that within 30 days of the decision. She didn't argue it in her appeal of the immigration judge's decision on remand, so the Board didn't – the Board didn't have occasion to consider it. Therefore, when she filed her motion for reconsideration, the Board properly denied – rejected that assertion because the Board's regulations require that a motion reconsideration allege mistakes of fact or law in the previous decision. And they didn't have occasion to review that decision, so they couldn't have made a mistake of fact or law, so they didn't – She didn't raise it in her motion for reconsideration? She raised it in her motion for reconsideration of the Board's denial of the immigration judge's decision on remand. But that was four years after the Board issued the decision she was seeking reconsideration of. She hasn't exhausted, and the Court doesn't have jurisdiction. However, even if the Court did have jurisdiction, the result would not change. The basis for the Petitioner's argument is that she had a mature right to asylum as soon as the Board issued its decision finding that she had a well-founded fear. Well, that's not true. Obviously, as the statute and regulations in your case law establish, the only thing that a determination of a well-founded fear on account of a protected factor establishes is the right to the Board's discretion. And the Board clearly believed that they needed more facts to determine whether or not the attorney general's discretion should be favorably exercised, because they concluded that the well-founded fear was based upon country conditions which existed six or seven years ago. But isn't that the BIA's fault that so much time had elapsed? I mean, in other words, the reason why country conditions may have changed six years later is because it took so long for the BIA to – I mean, it's a catch-22. I don't – no, I don't think it is a catch-22. I mean, I don't know whose fault it is. I mean, they obviously had lots of cases, et cetera, et cetera, et cetera. I mean, but the fact of the matter is – well, two things. The fact of the matter is the Board was certainly well aware that country conditions had changed because they hear El Salvadoran cases all the time, so they realized that they needed to send it back to make sure that an exercise of discretion would be made only in the scenario where the full picture was known. And that's all they did. They remanded to the immigration judge with specific instructions to make that determination, and he did. She was not entitled to a grant of asylum solely based upon the Board's initial finding and the Board quite properly, in accordance with his regulations, which we cite in our brief, that allow them to remand for further fact-finding should the Board determine that further fact-finding is necessary. So the Board certainly acted within its – properly. It did not, as the alien charges, exceed its authority whatsoever. They have the authority and the regulations and the statute to do exactly what they did. So the Board did not. Kagan. Was it remanded just for further fact-finding? I mean, didn't they start all over again? That's my recollection. No, no, no. I mean, she had established that she had a well-founded fear of persecution all over again? No. Only in light of the immigration judge's charge was to determine what country conditions. She had a well-founded fear in light of today's country conditions, or back in 2004 country conditions. The Board did not, obviously, did not disturb its finding that based upon 1994-96 conditions, she had a well-founded fear. Well, in the state of this record, if we were just simply to affirm, what happens? If you affirm the decision denying asylum, then she's removable. There's a final order of removal. In other words, what troubled me about the second round was it seemed to me that the BIA was backing away from its determination in 2000. I don't think they were. They weren't at all. They were just saying, we find she has a well-founded fear based upon country conditions in 96. I can't remember exactly, but in 96, say 96. But, I mean, they didn't say this specifically, but it's certainly inferential, because they had to exercise their discretion. Again, they knew, based upon all the cases they hear regarding El Salvador, that there had been a sea change in El Salvador. They couldn't find the facts. Can you tell us anything about the husband's application? Yes, Your Honor. The second issue is moot, because according to the DHS, the general counsel, the agency has denied the request for Nicara relief. They denied it because the statute precludes Nicara relief to individuals who have persecuted others, and the DHS found that Ms. Machado's husband was a persecutor of others, and then they referred the matter, I guess, to immigration court after that. So the matter is moot. One other question. HOXA. Do you have anything to say on the HOXA case? I have to admit that I don't know what HOXA says, but I'm happy to look it up when I get back. Is that a Ninth Circuit case? Yes. I'm happy to look it up and provide supplemental briefing if the Court pleases. With respect to the second issue, again, we think it's moot because of the DHS's decision, but even if it weren't moot, the board acted perfectly within its discretion in denying the motion to suspend proceedings pending the determination of the Nicara application. As the board indicated, and as we certainly discussed in our brief, their regulations provide for specific time periods. Obviously, as the Court is well aware, and the first decision demonstrates, the board had a serious backlog and was taking too long, so these time limitations were introduced, and they are regulatory time limitations. They were put out for notice of comment. The board has to comply with them because they're mandatory. The language of the regulations are mandatory. Thank you, counsel. Your time has expired. Thank you, Your Honor. Ms. Salazar, you have some reserve time. Yes, Your Honor. On the issue of exhaustion, I would agree with the Court that the government has waived that issue, and should the Court like to consider it, I would request an opportunity to do a supplemental briefing on that issue. I didn't have the opportunity to do that at the time because the government didn't raise it before. And I would also disagree or reiterate that the board did not remand for discretion only. It remanded for consideration of eligibility for relief, statutory relief, and therefore it was beyond their scope or their authority. I think those are the only two points I wanted to address. Thank you very much. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument
judges: Hall, O'scannlain, Gonzalez